IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Case No. _____ |
| ANGEL BORRERO, et. al | |

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Matthew Loucks, a Special Agent of the Federal Bureau of Investigation ("FBI"), New Haven Division, having been duly sworn, state:

## INTRODUCTION AND AGENT BACKGROUND.

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United Sates Code. I have been employed as a Special Agent with the FBI since March 2020. I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in diverse criminal matters, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. Prior to my employment as a Special Agent for the FBI, I spent five years employed as an Intelligence Analyst for the FBI, and four years employed as a Contractor Analyst for the Department of Treasury, Financial Crimes Enforcement Network ("FinCEN").

2. I am currently assigned to the FBI New Haven Violent Crimes Squad which is comprised of special agents from the FBI, with troopers from the Connecticut State Police, and with detectives and officers of various area police departments. In my current role, my particular

1

emphasis is the investigation of matters including, but not limited to, robberies (including bank robberies and Hobbs Act robberies), carjackings, firearm violations, mass killings, fugitives, kidnappings, assaults on federal officers, and murders-for-hire. Prior to my current role on the Violent Crimes Squad, I was assigned to the FBI Bridgeport Safe Streets Task Force ("BSSTF"). The BSSTF is comprised of special agents from the FBI and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), with troopers from the Connecticut State Police, and with detectives and officers of various area police departments, including the Bridgeport Police Department ("BPD"), Norwalk Police Department, and Trumbull Police Department. The focus of the investigative efforts of the BSSTF is crime related to violence, guns, and drugs, often perpetrated by organized groups or gangs.

3. During the course of my career as a FBI Special Agent, FBI Intelligence Analyst, and FinCEN Intelligence Analyst, I have participated in investigations of diverse crimes, including investigations into suspected homicides, kidnappings, narcotics trafficking, violent criminal activity, racketeering, and money laundering. My participation in these investigations has included assisting in the controlled purchase of narcotics utilizing confidential sources; writing and executing search and arrest warrants; providing testimony in federal grand jury and state court proceedings; analyzing records related to narcotics trafficking, violent criminal activity, and money laundering or other violations of the Bank Secrecy Act; reviewing and analyzing cellular records and cell site location information; and reviewing and analyzing social media records and information. I have participated in investigations into national and transnational organized criminal enterprises, including violent street gangs and large-scale narcotics trafficking organizations. I have attended gang and narcotics trainings sponsored by federal law enforcement. Finally, I have participated in investigations involving the use of court-authorized interception of

wire and electronic communications.

4. I am the case agent that has directed the investigation that is the subject of this Affidavit, in conjunction with members of the Danbury Police Department ("DPD") in Danbury, CT. As a result of my participation in this investigation and information received from other law enforcement officers, I am familiar with the circumstances of the investigation and the information set forth in this affidavit. This affidavit is intended to show that there is sufficient probable cause for the requested arrest warrants and does not set forth all my knowledge about this matter.

5. Further, I am a "federal law enforcement officer" within the meaning of the Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws as duly authorized by the Attorney General to request a search warrant.

6. I submit this affidavit in support of a criminal complaint and arrest warrants for ANGEL BORRERO ("BORRERO"), a.k.a. "CHI CHI"; JOSUE ALBERTO ROMERO ("ROMERO") a.k.a. "SWAY"; REYNALDO DIAZ ("DIAZ"), a.k.a. "REY"; ANTHONY PENA ("PENA") a.k.a. "TONY"; MICHAEL RIVAS ("RIVAS"); and RICARDO ESTRADA ("ESTRADA") a.k.a. "RICK," whose dates of birth are known to law enforcement, charging them with a violation of Title 18, United States Code, Section 371 (Conspiracy), Title 18, United States Code, Section 2119 (Carjacking), and Title 18, United States Code, Section 2 (Aiding and Abetting) (hereinafter, the "Subject Violations").

7. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested criminal complaint, it does not include all information gathered to date by the FBI and other law enforcement entities in relation to this investigation. Rather, it contains information that I believe establishes probable cause to believe that BORRERO, ROMERO, DIAZ, PENA, RIVAS, and ESTRADA committed violations of Subject Violations.

8. This Court has jurisdiction to issue the proposed warrant because it is a "magistrate judge within the district" where the property at issue was seized. Fed. R. Crim. P. 41(b)(1).

## THE TARGETS TO BE ARRESTED

9. The FBI and DPD are investigating BORRERO, ROMERO, DIAZ, PENA, RIVAS, and ESTRADA. For the reasons set forth below, there is probable cause to believe BORRERO, ROMERO, DIAZ, PENA, RIVAS, and ESTRADA were involved in the Subject Violations.

10. BORRERO, a.k.a. "CHI CHI", is a 23-year-old male and a resident of Miami,

11. ROMERO, a.k.a. "SWAY", is a 26-year-old male and a resident of Miami, Florida.

12. DIAZ, a.k.a. "REY", is a 20-year-old male and a resident of Belle Clade, Florida.

13. PENA, a.k.a. "TONY", is a 23-year-old male and a resident of Miami Gardens, Florida.

14. RIVAS is an 18-year-old male and a resident of Miami, Florida.

15. ESTRADA, a.k.a. "RICK", is a 21-year-old male and a resident of Miami, Florida.

## PROBABLE CAUSE

16. On August 25, 2024, DPD Officers were dispatched to Clapboard Ridge Road and Dogwood Lane, in Danbury, CT, based on a report of an abduction. DPD received 911 calls from multiple witnesses who observed several males assaulting another male and forcing the male victim into a white work van. DPD Patrol units were advised of three suspect vehicles, including a white Honda Civic and a Ram ProMaster van (commonly referred to as a sprinter van).

17. DPD Officers observed a white Ram ProMaster bearing CT Combination Registration C231907 on Clapboard Ridge Road, near the intersection of East Gate Road. A DPD Officer activated his patrol vehicle emergency lights and sirens and attempted to stop the van,

4

which accelerated at a high rate of speed, passing vehicles recklessly. The van eventually crashed and became disabled in the area of 47 Cowperthwaite Street, Danbury, approximately 1.2 miles from where DPD Officers attempted to initiate the stop.

18. At this time, four male suspects dressed in all black, later identified as BORRERO, ROMERO, PENA, and DIAZ, exited the Ram ProMaster van and fled on foot. Moments later, DPD Officers located the disabled van, which had struck a curb and had come to rest against a street sign.

19. Patrol units established a perimeter around the surrounding area of Cowperthwaite Street, south of where the van became disabled, and the last direction of travel provided for BORRERO, ROMERO, PENA, and DIAZ. It should be noted that several witnesses saw these four suspects exit the van but could not provide descriptive information about the suspects other than that they were wearing dark clothing. It is believed, based on statements made by the victims, S.C. and R.C., the suspects were wearing face coverings when they fled the disabled van, preventing witnesses and the victims from making definitive identifications.

20. A DPD Officer, known to the affiant, entered the wooded area south of Cowperthwaite Street, between Starr Avenue and the I-84 highway. The DPD Officer quickly located a Coach Brand wallet belonging to S.C., who I have learned is one of the victims in this case, near a small stream. The DPD Officer followed the small stream southbound and located DIAZ, who was shoeless, and hiding under the substructure of a bridge. After a brief foot pursuit, DPD Officers took DIAZ into custody.

21. As two DPD Officers exited the woods with DIAZ, they observed BORRERO in a wooded area between Starr Avenue and I-84. BORRERO fled on foot across I-84, crossing six highway lanes and traveling toward Prince Street. Two more DPD Officers entered a fenced-in

area near the direction BORRERO fled towards and located BORRERO hiding in the tall grass. At this time, BORRERO was taken into custody.

22. Shortly thereafter, a DPD Officer on Kohanza Street, near the intersection of Prince Street, approximately .3 miles from where the van was disabled, was flagged down by a resident who stated an unknown male was hiding behind 16 Prince Street. The DPD Officer entered the fenced-in area behind the house, and located PENA who was taken into custody.

23. At approximately 6:59 PM, DPD Dispatch received call for a subject hiding behind 15 Prince Street, where two DPD Officers subsequently located ROMERO hiding in a wooded area and took him into custody.

24. At the time of their arrests, BORRERO, PENA, DIAZ, and ROMERO all wore dark clothing. BORRERO, PENA, DIAZ, and ROMERO were all apprehended within a quarter-mile radius from where the Ram ProMaster van was disabled, and all were located in a fenced-in or wooded area in an apparent attempt to evade the Police.

25. When DPD Officers arrived at the location of the disabled van, an Officer located the victims, S.C. and R.C., bound with duct tape around their arms and legs in the back of the van. S.C. was also bound around his face and eyes with duct tape. S.C. had significant injuries to his face and arm, including large hematomas above and under his eyes and swelling to his left arm.

26. S.C. and R.C. advised DPD Officers on scene that they had been forcibly removed from their vehicle, dragged into the van, and bound with duct tape. S.C. and R.C. were transported to Danbury Hospital for further evaluation.

27. DPD Detectives responded to the Danbury Hospital Emergency Room and spoke with the victims, S.C. and R.C., who advised the Detectives that earlier that evening, they were operating a 2024 Lamborghini Urus. S.C. was the driver and R.C. was the front seat passenger. As

6

the victims turned onto Damia Drive in Danbury, CT, their vehicle was rear-ended by a white Honda Civic. At this point, according to S.C. and R.C., a white work van cut in front of their vehicle, and several individuals surrounded the victims' vehicle. S.C. estimated that approximately 6 or 7 men wearing all black, with black face masks, surrounded their car. The male suspects began to yell at S.C. and R.C., instructing them to exit the vehicle. The suspects then forcibly pulled S.C. and R.C. from their vehicle by their arms and dragged them towards the open side door of the white work van.

28. S.C. advised that he began to resist, attempting to break free from the suspects' grasp, at which time several of the suspects began to strike S.C. in the face with punches and a baseball bat. The suspects repeatedly told S.C. and R.C. that they would "kill them." The victims were pushed into the back of the work van and held down. The suspects then bound both victims' arms and feet with silver duct tape, which they also used to cover S.C.'s face. The suspects forced R.C. to lie face down and ordered her not to look at them. R.C. complained to the suspects that she could not breathe and that she had asthma. S.C. stated that he continued to resist and was struck approximately seven to eight times with a baseball bat and five to six times with punches. These strikes were to S.C.'s face and to his left arm as S.C. attempted to protect his face with his left arm.

29. S.C. and R.C. heard police sirens shortly after the van began to move. At this time, S.C. and R.C. told law enforcement that one of the suspects in the back of the van started to yell something like, "Call Rick... we are in deep shit," and instructed the driver to drive fast. It is believed that the suspects were referring to Ricardo ESTRADA, who was later arrested at a residence on Painter Hill Road, Roxbury, CT, for his involvement in this incident. S.C. and R.C. felt the van crash and stated all the suspects exited the vehicle and fled on foot. S.C. and R.C. noted that several individuals, including the Danbury Police, ran to them and began to tend to them.

30. Immediately after the suspects stole the Lamborghini and forced the victims into the white van, a FBI Supervisory Special Agent happened to be in the Clapboard Ridge Road and King Street area, when he observed the Ram ProMaster van followed by a white Honda Civic. The FBI SSA stated that the behaviors of the vehicles appeared suspicious, and he attempted to follow them. The FBI SSA was able to capture a partial of the license plate of the Honda Civic (87347), which a DPD Sergeant searched in NCIC/COLLECT. The DPD Sergeant located a possible match on a 2018 Honda Civic bearing CT Reg BN87347, registered to Mongoose Enterprises LLC.

31. A DPD Detective later contacted the registered owner of the white 2019 Ram ProMaster van with CT Combination registration C231907, recovered at 47 Cowperthwaite Street. The owner advised that he rented the van using the rental company Turo. The owner advised that the car was rented by BORRERO and BORRERO picked up the van on Friday, August 23, 2024, at approximately 2:00 AM. The owner advised that the car was due back on August 25, 2024, at 6:30 PM but was not returned.

32. DPD Officers also located a Nissan Sentra, bearing Florida Registration 70DQJD, registered to Enterprise rental company, at the corner of Clapboard Ridge Road and Damia Drive, in the area S.C. and R.C. were abducted. This vehicle was abandoned on the side of Clapboard Ridge Road. In plain view, Officers observed a Louis Vuitton purse on the front passenger seat, consistent with the one belonging to R.C. A DPD Detective contacted the Enterprise law enforcement line about the Nissan Sentra and was advised BORRERO rented the Nissan Sentra.

33. DPD Officers were unable to locate the 2024 Lamborghini Urus on Damia Drive, where S.C. and R.C. were abducted. The DPD put out a BOLO to all units for the Lamborghini Urus, which was believed to have a temporary registration card hanging from the rear of the vehicle. During the investigation, an unknown resident from East King Street, Danbury, CT,

contacted DPD dispatch and advised of a Lamborghini that appeared abandoned in the woods off the roadway on East King Street in Danbury. Units located a Lamborghini Urus bearing a New Jersey temporary registration, abandoned and unoccupied in the woods. This vehicle was seized and towed to the Danbury Police Department. I know based on my training and experience that Lamborghinis are manufactured in Italy and thus the stolen car must have been transported, shipped, or received interstate and foreign commerce to arrive in Connecticut.

34. As part of this investigation, I interviewed an individual with relevant information about the planned carjacking. That individual told me and other officers that BORRERO paid for the six suspects to travel from Florida to New York, NY on or about August 23-24, 2024, and that some of them spent the night together in New York City on August 23, 2024. They then travelled to Connecticut, where they stayed at a house in Roxbury, Connecticut (described in more detail below). The individual explained that on the day of the attempted carjacking, the suspects traveled in three separate cars (a white Honda sedan, a van, and a dark silver Nissan sedan) to the victims' residence in Danbury, CT. They then conducted surveillance on the victims' home and vehicle, a Lamborghini, and when the Lamborghini left the residence, the suspects followed in the three vehicles. At some point, the individual explained that the white Honda rear-ended the Lamborghini and then four of the suspects jumped out of the three vehicles, removed the victims from their car, and forced them into the back of the van where they were restrained with duct tape. This account is consistent with what law enforcement learned from the victims, R.C. and S.C.

35. As part of this investigation, law enforcement agents (including your affiant) have reviewed a group text message chat which included cell phones belonging to ROMERO, BORRERO, DIAZ, PENA, and two other individuals utilizing telephone numbers ending 6964 and 8276, later identified as ESTRADA and RIVAS, respectively. That text message conversation

9

reveals that that BORRERO organized, paid for, and booked flights for the six suspects to travel from Florida to the New York area. In the messages, BORRERO asked the other suspects for their email addresses to complete the flight bookings, and then sent flight confirmations to the other suspects.

36. In the group text conversation, BORRERO stated "If this go good we out to Cali next". Based on my training and experience, I believe BORRERO was advising the other suspects that if their planned criminal conduct in Connecticut went well, they would travel to California to conduct further criminal activity. In response, ROMERO responded, "Tbh [which I know to be shorthand for "to be honest"] this group right here perfect for dis." Based on my training and experience, I believe ROMERO meant that he and the other five suspects were the right group to conduct the carjacking that occurred in Danbury, CT two days later. That same evening, ROMERO sent another text message to the group chat stating, "Chichi we are more ready than ever." Based on my training and experience, I believe ROMERO was advising BORRERO that the group was prepared and ready to conduct the planned carjacking that occurred in Danbury, CT two days later.

37. Further review of the group chat revealed that in the early morning hours of August 25, 2024, the suspects began to prepare for the carjacking that occurred later that evening. DIAZ sent a text message to the group asking, "is anyone else awake?" PENA, using telephone number ending 7261, responded "We good till we get called I think... Chichi still sleep". Based on my training and experience, I believe PENA advised the group that they did not have to do anything until someone received a telephone call with further instructions for the suspects. DIAZ subsequently responded, "we leave around 7-8". Based on my training and experience, I believe DIAZ was advising the remaining suspects they would leave the Airbnb to travel to Danbury, CT between 7:00 AM and 8:00 AM.

10

38. Further text messages show that the six suspects were actively engaged in surveillance measures of the victims of the subsequent carjacking throughout the afternoon of August 25, 2024.

39. As part of this investigation, I have viewed a video, timestamped 5:43 PM on August 25, 2023, of one of the suspects, believed to be ESTRADA, driving the stolen Lamborghini after the carjacking occurred. The video was recorded by cell phone by one of the other suspects driving the white Honda sedan, believed to be RIVAS. I can see in the video that the driver of the stolen Lamborghini appears to be searching for a place to leave and hide the vehicle, which he ultimately does off the roadway on East King Street. I have reviewed the GPS coordinates of the video, which show that it was filmed on East King Street in Danbury.

40. Based on the details recovered from the group text message thread between the suspects involved in this incident/investigation, investigators determined two additional suspects were not apprehended. Based on the information recovered from the group text message described above, we believed those suspects to be RIVAS and ESTRADA.

41. DPD Detectives searched telephone numbers ending 6964 and 8276 through law enforcement databases subscribed to the City of Danbury, which returned carrier information for T-Mobile for both numbers.

42. Based on information from the group text message, we also determined the suspects in this incident rented an Airbnb located on Painter Hill Road in Roxbury, CT. The residence at on Painter Hill Road is a four-bedroom, large white home with a hot tub in the rear and a long, gravel driveway, which is consistent with information learned during the investigation about where the suspects were staying. I have also reviewed text messages that show shared location information and advise the six suspects to return to a house on Painter Hill at approximately 5:36

PM on August 25, 2024, which is when this incident occurred.

43. DPD Detectives completed an emergency request form for T-Mobile based on the severity of the incident, and the possibility the remaining suspects could alter or destroy evidence before their apprehension. T-Mobile subsequently provided records which revealed telephone number ending 6964 (the phone number belonging to ESTRADA) was pinging in an area consistent with the device being located on Painter Hill Road, Roxbury, CT.

44. Based on the investigation, we believed the two outstanding suspects, RIVAS and ESTRADA, returned to the house on Painter Hill Road in the white Honda Civic. Accordingly, DPD Detectives, Special Agents of the FBI, including your affiant, and Connecticut State Police Troopers responded to the residence on Painter Hill Road, Roxbury, CT early in the morning on August 26, 2024.

45. Upon our arrival at the house on Painter Hill Road, Roxbury, CT, we located the aforementioned Honda Civic, which had heavy front-end damage, parked and unoccupied in the driveway of the residence. The damage to the car is consistent with the accounts of S.C. and R.C., who told law enforcement that their vehicle was rear-ended by the white Honda Civic, which began the carjacking. Officers subsequently made contact with RIVAS and ESTRADA, who were inside the residence on Painter Hill Road. Both parties exited the residence and were taken into custody without incident and eventually transported to the DPD. The Honda Civic was towed to the Danbury Police Headquarters.

46. Investigators subsequently cleared the residence to confirm no other individuals were inside the residence. During the search, investigators observed in plain view: two cellular devices, two black balaclava-style face masks, and two jump ropes, all of which were seized. The balaclava masks were consistent with the face masks provided in descriptions of the suspects by

12

both victims. The jump ropes were consistent with the jump ropes foundin the Ram ProMaster van. It is believed that these jump ropes were likely planned to be used to restrain the victims.

47. All six suspects were charged with various Connecticut state offense, including Interfering with Officer/Resisting, Larceny of a Motor Vehicle – 1st Offense, Conspiracy to Commit/Larceny of a Motor Vehicle – 1st Offense, Reckless Endangerment – 1st Degree, Conspiracy to Commit/Robbery by Carjacking Enhancement, Conspiracy to Commit/Unlawful Restraint – 1st Degree, Kidnapping – 1st Degree, Assault – 1st Degree, Unlawful Restraint – 1st Degree, Robbery by Carjacking Enhancement, Conspiracy to Commit/Assault – 1st Degree, Reckless Driving, Breach of Peace – 2nd Degree, Conspiracy to Commit/Reckless Endangerment – 1st Degree, Evading Responsibility with Injury/Property Damage, Conspiracy to Commit/Kidnapping – 1st Degree, and Engaging Police in Pursuit.

## CONCLUSION

48. Based upon the information above, I respectfully submit that there is probable cause to believe, and I do believe, that on or about August 25, 2024, BORRERO, ROMERO, DIAZ, PENA, RIVAS, and ESTRADA violated Title 18, United States Code, Section 371 (Conspiracy), Title 18, United States Code, Section 2119 (Carjacking), and Title 18, United States Code, Section 2 (Aiding and Abetting). Therefore, I respectfully seek the issuance of arrest warrants for BORRERO, ROMERO, DIAZ, PENA, RIVAS, and ESTRADA based on the accompanying criminal complaint.

Respectfully submitted,

_____
MATTHEW LOUCKS
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 3rd day of September, 2024. at Bridgeport, CT.

_____
THE HON. S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE